**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

ANGELA C. CHELETTE                                         CIVIL ACTION

versus
                                                                        24-cv-100-SDD-RLB
TOWN OF BRUSLY, LA, AND
JORDAN ZACHARY, *individually*

**<u>RULING</u>**

This matter comes before the Court on the Motion for Summary Judgment[1] filed by

Defendants Town of Brusly, LA ("the Town") and Officer Jordan Zachary ("Zachary") or

collectively ("Defendants"). Plaintiff, Angela C. Chelette ("Plaintiff" or "Chelette") filed an

Opposition[2] to Defendants' Motion. For the reasons set forth below, Defendants' Motion

will be denied.

I.     **FACTUAL BACKGROUND**

This lawsuit arises out of a traffic stop that occurred in the Town of Brusly,

Louisiana, on March 16, 2023.  Zachary, a corporal with the Brusly Police Department,

pulled Plaintiff over for speeding near Brusly Upper-Middle School.[3]  Zachary was in the

course and scope of his employment at the time of the stop, and the entire stop was

recorded by Zachary's body camera.[4]

According to Defendants, during the stop, Plaintiff told Zachary that she "used to

work for West Baton Rouge" and showed him a West Baton Rouge Parish Sheriff's Work-

---

[1] Rec. Doc. 22.
[2] Rec. Doc. 28.
[3] Rec. Doc. 1, ¶ 4.
[4] Rec. Doc. 1-1, Body Camera Video attached as Exhibit A to the Complaint.

Release ID.[5] Plaintiff then advised Zachary that she "work[s] for the Assessor's office now."[6] Zachary asked "Oh, the Parish Assessor?" to which Plaintiff responded "Uh- huh."[7] During the stop, Plaintiff advised Zachary several times that she observed an incident occurring at the traffic light at Main Street and LA-1 (the "traffic light").[8] Zachary gave Plaintiff a warning to slow down and let her go without issuing a citation.

Zachary then proceeded to the traffic light to investigate the disturbance Plaintiff reported;[9] when he arrived, he observed no incident, nor did he find evidence that an incident had occurred.[10] Zachary called his supervisor, Assistant Chief Tom Southon ("Southon") with the Brusly Police Department to discuss the circumstances of the traffic stop.[11] Southon testified that Zachary "felt that he had been misled in order [for Plaintiff] to get out of a traffic violation."[12] Southon advised Zachary that, if he believed sufficient probable existed, Zachary should prepare and submit an affidavit for arrest warrant.[13]

Later that night, Zachary submitted an Affidavit for Arrest Warrant for one count of speeding and one count of false communication with the intent to cause an emergency response.[14] This arrest warrant was signed by Judge Alvin Batiste and issued on March 16, 2023.[15] The next day, Southon reviewed the video footage from the traffic camera located at Main Street and LA-1 in addition to Zachary's body camera video of Plaintiff's

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] Rec. Doc. 22-5, Zachary Depo, p. 25, lines 4-10.
[10] *Id.*
[11] Rec. Doc. 22-7, Southon Depo, p. 26, lines 7-22.
[12] *Id.*, lines 20-22.
[13] *Id.* at p. 27, lines 8-12.
[14] Rec. Doc. 1-3.
[15] *Id.*

traffic stop.[16] After reviewing all video footage, Southon contacted the warden of the West Baton Rouge Parish jail to determine whether Plaintiff was a current employee of the West Baton Rouge Parish Sheriff;[17] the warden advised that Plaintiff was a former employee of the West Baton Rouge Sheriff and that if she was still in possession of an ID card from her prior employment, that ID needed to be returned to the Sheriff.[18] Based on this information, Zachary submitted a second Affidavit for Arrest Warrant for a violation of La R.S. 12:112.1 False impersonation of a peace officer[19] and a third Affidavit for a Search Warrant for the retrieval of the West Baton Rouge Sheriff's Work Release ID.[20] Each warrant was reviewed by Judge Elizabeth Engolio and found to support probable cause. Judge Engolio signed these warrants on March 20, 2023.[21] Plaintiff was subsequently arrested on March 20, 2023, and the West Baton Rouge Sheriff's Work-Release ID was located and seized from her vehicle.[22] Zachary also claims Plaintiff made threatening remarks during the arrest, prompting Zachary to submit an Affidavit for Probable Cause of Arrest for one count of Public Intimidation and retaliation.[23] This affidavit was signed by Judge Engolio on March 20, 2023.[24] Ultimately, the charges against Plaintiff were *nolle prossed* by the District Attorney's Office.[25]

---

[16] Rec. Doc. 22-5, Zachary Depo, p. 86, lines 18-25; p. 87, lines 1-8; and p. 88; Rec. Doc. 22-7, Southon Depo, p. 31, lines 2-9; p. 32, lines 15-18.
[17] Rec. Doc. 22-7, Southon Depo, p. 31, line 25; p. 32, lines 1-14.
[18] *Id.* at p. 53, lines 1-23.
[19] Rec. Doc. 22-6, pp. 36-38.
[20] *Id.* at p. 39.
[21] *Id.* at pp. 36-39.
[22] Rec. Doc. 22-4.
[23] *Id.*
[24] Rec. Doc. 22-6, pp. 34-35.
[25] Rec. Doc. 22-4.

Plaintiff admits in large part to the factual sequence of events offered by Defendants;[26] however, Plaintiff challenges Zachary's interpretation of the bodycam footage and the foundation for the arrest warrants obtained. Plaintiff maintains that, on the date of the traffic stop, she witnessed a man and a woman arguing at the traffic light outside their vehicle.[27]  She then noticed Zachary's police car parked in the school's parking lot, and she attempted to flag him down to inform him of the argument.[28]  Plaintiff denies that she was stopped by Zachary, claiming that she initiated contact with Zachary to report the incident at the traffic light.[29]  When she got Zachary's attention, Plaintiff complied with his instruction to pull into the parking lot and he stated: "I'm gonna come talk to you, you can pull into the parking lot please, I got you for speeding."[30] Zachary approached Plaintiff's vehicle, and Plaintiff contends the following exchange took place:

**OFFICER ZACHARY**: Yes mam, what were you saying is going on at the bank?

**CHELETTE**: No. I was saying I think they got people out of their cars.

**OFFICER ZACHARY**: At the light?

**CHELETTE**: Yeah, or like arguing or something.

**OFFICER ZACHARY**: Okay, I'm gonna go there right as soon as we're done. I'm Corporal Zachary with the Brusly police. That's the reason for stopping you in a 45 zone okay? [Shows radar gun]. Do you happen to have your license and registration?

**CHELETTE**: I have my weapon on me.

**OFFICER ZACHARY**: Mam?

**CHELETTE**: I got my weapon on me.

---

[26] *See generally*, Rec. Doc. 28-1.
[27] Rec. Doc. 28-14, Plaintiff Depo, p. 15.
[28] *Id.*
[29] *Id.* at p. 14.
[30] Rec. Doc. 28-2, Bodycam video.

**OFFICER ZACHARY**: Okay. I appreciate you letting me know, that's fine.

**CHELETTE**: I used to work for…

**OFFICER ZACHARY**: I appreciate that, actually.

**CHELETTE**: I used to work for West Baton Rouge.

**OFFICER ZACHARY**: Oh really, what's your name?

**CHELETTE**: Chelette. [Chelette shows ID card].

**OFFICER ZACHARY**: I gotcha.

**CHELETTE**: Now I work at the assessor's office. [Chelette shows different ID card].

**OFFICER ZACHARY**: Oh the parish assessor's?

**CHELETTE**: Uh huh.

**OFFICER ZACHARY**: No kidding, alright well look, you have a good day, slow it down okay?

**CHELETTE**: Officer…

**OFFICER ZACHARY**: So what's going on, a wreck or what?

**CHELETTE**: No. At the light there was people arguing and both of their car doors was open.

**OFFICER ZACHARY**: Okay, alright. [Officer Zachary returns to police cruiser].[31]

Zachary proceeded to the traffic light where Plaintiff had seen the argument, but he did not see anything at the intersection when he arrived. Plaintiff agrees that, on the same night of the traffic stop, Zachary executed an affidavit for Plaintiff's arrest on the charges of False communication with the intent to cause an emergency response (Felony), a violation of La. R.S. 14:126.1.1, and Maximum Speed Limit (58 in a 45) (Misdemeanor), a

---

[31] Rec. Doc. 28-2, Plaintiff's interpretation of Bodycam video.

violation of La. R.S. 32:61.[32]  Plaintiff does, however, take issue with highlighted portion

Zachary's sworn affidavit that supported issuance of the warrants, which reads:

> [Chelette] stated to Affiant that there was a serious disturbance/motor vehicle accident at the redlight (Pointing towards La-1 @ Main St.) **while stating she was a Work-Release deputy for WBRSO and an employee of the West Baton Rouge Parish Assessor's Office.** [Chelette] at this time was displaying a WBR-Deputy Sheriff ID badge.
> \*\*\*
> On 3/20/23 at approximately 1600 hours at shift change Affiant was notified by Brusly's Assistant Chief of Police, Major Thomas Southon, that upon inquiring about the employment status of Angela C. Chelette as a deputy with their department/division Warden, Lester Pinkney, Pinkney advised Major Southon that Angela had in-fact resigned in lieu of termination some time ago and absolutely should not have any WBRSO property or anything stating she is a deputy for the department in any capacity.[33]

Zachary also executed an affidavit for a search warrant of Plaintiff's home so he

could "to take into custody the WBR Sheriff's Deputy ID badge displayed on the 3/16/23

traffic stop due to it's [sic] evidentiary value and any other law enforcement paraphernalia

that Chelette could potentially attempt to use in the future to falsely identify herself as a

member of law enforcement."[34]

On March 20, 2023, Zachary executed the search and arrest warrants at Plaintiff's

home and took Plaintiff into custody.  During booking, Plaintiff learned that Zachary had

executed another affidavit for a warrant based on the charge of Public intimidation and

retaliation – (Felony), a violation of La. R.S. 14:122, because he was told by other law

enforcement personnel that Plaintiff stated that Zachary "won't have a job or long after

this."[35]  In this affidavit Zachary swore as follows:

---

[32] Rec. Doc. 28-3.
[33] Rec. Doc. 28-5 (Plaintiff's emphasis).
[34] Rec. Doc. 28-7.
[35] Rec. Doc. 28-9.

Upon conducting a search warrant and arrest warrant pertaining to Angela Clayton Chelette on 3/20/23, Chelette made threatening comments toward and about the Affiant stating the following:

"He (Affiant) won't have a job for long after this." Jail staff and deputies asked if I heard Chelette make the threats. **Affiant was aware of this and also was told of similar threats by Chelette while en route to the WBR [Detention Center]**.[36]

Based on this affidavit, Judge Engolio signed an arrest warrant for this charge.[37] The following day, Plaintiff was released from the WBR jail.[38] Subsequently, Plaintiff was formally charged by Bill of Information with False Personation of a Peace Officer, a felony violation of La. R.S. 14:112.1(A)(1), and False Communication with Intent to Cause an Emergency Response, a felony violation of La. R.S. 14:126.1.1(A)(B)(3).[39] Later, the 18th Judicial District Attorney's Office for the State of Louisiana dismissed all criminal charges against Plaintiff.

Plaintiff filed this lawsuit under 42 U.S.C. § 1983 for illegal seizure/false arrest, malicious prosecution, and a Louisiana state law claim of defamation. Defendants now move for summary judgment, arguing that because Plaintiff was arrested pursuant to a probable cause warrant signed by a judge, her claims must be dismissed. Plaintiff opposes this motion, arguing that Defendants miss the point because the "very crux of the claims against them" are that Zachary lied in the affidavits to illegally obtain probable cause warrants.[40] Moreover, Plaintiff maintains that the questions of Zachary's credibility and motivation are materially disputed; thus, a jury must resolve them.[41]

---

[36] *Id.* (Plaintiff's emphasis).
[37] Rec. Doc. 28-10.
[38] Rec. Doc. 28-11.
[39] Rec. Doc. 28-12. Although the Affidavit and Warrant refer to the Charge as False Impersonation, the Bill of Information refers to the Charge as False Personation. This is a distinction without a difference; however, the Court will use the term in the quoted document when referenced.
[40] Rec. Doc. 28, p. 5.
[41] *Id.* at p. 6.

## II.    LAW AND ANALYSIS

### A.    Rule 56 Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[42] "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"[43]

However, "the movant 'need not negate the elements of the nonmovant's case.'"[44] That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial."[45] "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."[46]

If the movant carries the burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"[47] The non-movant's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[48]

---

[42] Fed. R. Civ. P. 56(a).

[43] *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).

[44] *Id.* (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))).

[45] *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477 U.S. at 323 ("we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.") (emphasis in original)).

[46] *Id.* (citing *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

[47] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citations omitted).

[48] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted).

Ultimately, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[49] Additionally,

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.[50]

The primary evidence upon which both parties rely in this matter is the body camera video footage of the traffic stop in question. The United States Supreme Court and Fifth Circuit have provided guidance for the court's consideration of body camera footage. When the summary judgment record includes video evidence, courts are not bound to accept facts contradicted by the video.[51] "But when video evidence is ambiguous or incomplete, ... 'a court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account.'"[52] It is within the province of the jury to resolve such factual disputes.[53]

## B.    Section 1983 Generally

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.[54] It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

---

[49] *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up).

[50] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (internal citations omitted).

[51] *Crane v. City of Arlington*, No. 21-10644, 2022 WL 4592035, at *4 (5th Cir. Sept. 30, 2022) (citing *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007))).

[52] *Id.* (first citing *Estate of Aguirre v. City of San Antonio*, 995 F.3d 395, 410 (5th Cir. 2021); and then quoting *Darden v. City of Fort Worth*, 880 F.3d 722, 730 (5th Cir. 2018)).

[53] *See id.* ("*Scott* was not an invitation for trial courts to abandon standard principles of summary judgment by making credibility determinations or otherwise weighing the parties' opposing evidence against each other any time a video is introduced into evidence.").

[54] *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981).

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....[55]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[56]

To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[57] A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[58]

Defendant Zachary has asserted the affirmative defense of qualified immunity. The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[59] In striking this balance, qualified immunity shields "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[60]

---

[55] 42 U.S.C. § 1983.

[56] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir. 1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985).

[57] *See Blessing v. Freestone,* 520 U.S. 329, 340 (1997); *Daniels v. Williams,* 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir. 1984).

[58] *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986).

[59] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[60] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

When a public official asserts the defense of qualified immunity, the plaintiff has the burden of establishing a constitutional violation and overcoming the defense.[61] To meet this burden, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[62] The court has discretion to decide these prongs in any order.[63]

An official's conduct is not objectively unreasonable "unless all reasonable officials in the [official's] circumstances would have then known that the [official's] conduct violated the plaintiff's rights."[64] When denying qualified immunity, a court must point to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."[65]

### C. Illegal Seizure/False Arrest & Malicious Prosecution[66]

In *Hughes v. Garcia*, the Fifth Circuit aptly explained the standards utilized in resolving these types of Fourth Amendment claims:

---

[61] *Jackson v. Texas*, 959 F.3d 194, 201 (5th Cir. 2020) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)).

[62] *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)(citing *Aschcroft v. al-Kidd*, 563 U.S. 731, 735 (2001)).

[63] *Jackson*, 959 F.3d at 200.

[64] *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).

[65] *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013).

[66] Plaintiff also brings a malicious prosecution claim under Louisiana state law. Federal and Louisiana malicious prosecution claims often overlap, particularly in cases arising in Louisiana federal courts. "The elements of a malicious prosecution claim in Louisiana are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff." *Durant v. Gretna City*, 2020 WL 263669, at *29 (E.D. La. Jan 17, 2020)(quoting *Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15); 168 So. 3d 362, 368 (quoting *Jones v. Soileau*, 448 So.2d 1268, 1271 (La. 1984)))). Malice under Louisiana law can be inferred from a lack of probable cause or reckless disregard for the truth. *Bledsoe v. Willis*, 665 F.Supp.3d 810, 818 (W.D. La. 2023); *Phillips v. Whittington*, 497 F.Supp.3d 122, 164 (W.D. La. 2020)). For example, in *Vidrine v. U.S.*, the court noted that malice could be established by showing that law enforcement officers lacked an honest and reasonable belief in the accused's guilt at the time charges were pressed. 846 F.Supp.2d 550, 559 (W.D. La. 2011). Additionally, Louisiana courts have held that the continuation of a prosecution with malice and without probable cause can also satisfy the malicious prosecution framework. *Id.* Accordingly, the Court's ruling as to the Sec. 1983 *Franks* malicious prosecution claim will apply equally to Plaintiff's state law malicious prosecution claim.

As a baseline, "[t]he constitutional claim of false arrest requires a showing of no probable cause." *Club Retro, LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001)). Similarly, "the gravamen of the Fourth Amendment claim for malicious prosecution ... is the wrongful initiation of charges without probable cause." *Thompson v. Clark*, 596 U.S. 36, 43, 142 S.Ct. 1332, 212 L.Ed.2d 382 (2022). Probable cause in turn requires "a probability or substantial chance of criminal activity, not an actual showing of such activity." *Winfrey v. Rogers*, 901 F.3d 483, 495 (5th Cir. 2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Both violations therefore turn on whether a reasonable officer would believe the suspect had committed a crime. *See Terwilliger v. Reyna*, 4 F.4th 270, 282 (5th Cir. 2021) ("[C]ourts must look to the totality of the circumstances and decide whether these historical facts, *viewed from the standpoint of an objectively reasonable police officer*[,] demonstrate a probability or substantial chance of criminal activity."[67]

The independent intermediary doctrine ensures that officers can make reasonable probable cause mistakes: "A warrant secured from a judicial officer typically insulates law enforcement personnel who rely on it" from liability for unlawful arrest, even in the absence of probable cause. *Villarreal v. City of Laredo*, 94 F.4th 374, 393 (5th Cir. 2024) (en banc). The shield applies because "'if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation' for the Fourth Amendment violation." *Jennings v. Patton*, 644 F.3d 297, 300–01 (5th Cir. 2011) (quoting *Cuadra v. Houston ISD*, 626 F.3d 808, 813 (5th Cir. 2010)).[68]

However, the Fifth Circuit explained that "the independent intermediary doctrine has an important exception."[69] "If 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue,'" a neutral magistrate's signature does not shield the offending officers.[70] Further, under *Franks v. Delaware*, "it is equally obvious that no reasonably competent officer would lie or make material omissions in a warrant application."[71] Under *Franks,* "an officer cannot avoid liability where a warrant affidavit (1)

---

[67] 100 F.4th 611, 619 (5th Cir. 2024)(original emphasis)(quotations omitted).
[68] *Id.*
[69] *Id.*
[70] *Id.* (quoting *Villarreal*, 94 F.4th at 393 (emphasis omitted) (quotation omitted)).
[71] *Id.* (citing *Terwilliger*, 4 F.4th at 281 ("Functionally, the holding of *Franks* is an exception to the independent intermediary doctrine.")).

contains false statements or material omissions (2) made with at least 'reckless disregard for the truth' that (3) were 'necessary to the finding of probable cause.'"[72] When an officer submits an affidavit "barred by *Franks* [he] violates the Fourth Amendment because:

> The requirement that a warrant not issue 'but upon probable cause, supported by Oath or affirmation,' would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile."[73]

If a plaintiff can satisfy the three *Franks* factors, "then any arrest or prosecution lacked probable cause, the defendant officers are not entitled to the protection of the independent intermediary doctrine, and the misstatements or omissions suffice to establish a Fourth Amendment violation."[74] The court continued:

> Two additional wrinkles to the *Franks* doctrine bear emphasis. First, *Franks* liability is not limited to the person who prepared or signed the warrant affidavit. Instead, liability can attach to (A) any person directing the inclusion of false information in the affidavit, *see Guerra*, 82 F.4th at 288, or (B) any person who supplied false information for the purpose of compiling a warrant affidavit, *see Melton v. Phillips*, 875 F.3d 256, 262 (5th Cir. 2017) (en banc). So as long as an officer prepared information for the purpose of inclusion in a warrant affidavit, he can be liable without preparing the affidavit. *See Laviage v. Fite*, 47 F.4th 402, 406 (5th Cir. 2022) (citing *Franks*, 438 U.S. at 171, 98 S.Ct. 2674) ("[T]he Supreme Court held an officer violates the Fourth Amendment if he deliberately or recklessly provides false information necessary to secure an arrest warrant.").

> Second, *Franks* requires courts to conduct a "corrected affidavit" analysis. *Terwilliger*, 4 F.4th at 283 (quoting Winfrey, 901 F.3d at 495). Courts must consider whether the warrant affidavit would support probable cause if the misstatements and material omissions were eliminated. *See Winfrey*, 901 F.3d at 495.

***

> In sum, an officer who recklessly or intentionally contributed misleading statements or omissions to a warrant affidavit violates the arrestee's

---

[72] *Id.* (quoting *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674; *see also Winfrey*, 901 F.3d at 494 (same)).
[73] *Id.* at 619-20 (quoting *Franks*, 438 U.S. at 168)(quoting U.S. Const. amend. IV)).
[74] *Id.* at 620 (citing Terwilliger, 4 F.4th at 281–82).

constitutional rights. That violation has been clearly established since *Franks. See Winfrey*, 901 F.3d at 494.[75]

Zachary contends he is entitled to summary judgment for essentially the following reasons: the bodycam video confirms his version of the traffic stop conversation; if he made any mistakes in the application affidavits, they were reasonable under the circumstances and he is entitled to qualified immunity; even if you remove the challenged statements in the affidavits, there remains probable cause to arrest Plaintiff on the charges described; and the arrest warrant issued by a judge broke the chain of causation between any alleged constitutional violation and himself.

<u>Bodycam Video Footage</u>[76]

The Court reviewed the bodycam video footage submitted by the parties multiple times. The Court finds that the video is sufficiently vague and ambiguous to demonstrate materially disputed facts as to what transpired during the traffic stop. From the video, it is unclear to the Court who initiated contact, Plaintiff or Zachary. Plaintiff can be heard speaking to Zachary first, but the Court could not ascertain what Plaintiff stated. It is also clear that Zachary told her to pull into the parking lot because he "got [her] speeding." Plaintiff can be heard telling Zachary that there are people at the light arguing or something." She also advises Zachary that she has a weapon, and Zachary thanks her for providing that information. Plaintiff can be heard stating, "I used to work for …," then Plaintiff turns her heard away from the window, and the Court cannot ascertain what else she said. Then she shows some form of ID and states "now I work for the Assessor's Office." Zachary inquires about the incident Plaintiff reported and can be heard asking if

---

[75] *Id.*
[76] The Court observed the following from Rec. Doc. 28-2.

it was "a wreck or what?" to which Plaintiff responds "no, people arguing." After this

exchange, Zachary is heard calling in "some kind of disturbance."

As discussed above, under *Franks,* "an officer cannot avoid liability where a warrant

affidavit (1) contains false statements or material omissions (2) made with at least 'reckless

disregard for the truth' that (3) were 'necessary to the finding of probable cause.'"[77]  At this

summary judgment stage, Plaintiff can survive summary judgment if she demonstrates

genuine issues of material fact to support these three elements.  She must also submit

summary judgment evidence to overcome Zachary's qualified immunity defense.

<u>Affidavit for Arrest Warrant – False Communication with Intent</u>
<u>to Cause Emergency Response</u>

In his affidavit seeking a warrant for this charge, Zachary attests that he was parked

in the Brusly Middle School parking lot when he "pulled over the offending vehicle and the

driver" for speeding.[78]  Plaintiff claims this is false and testified under oath that the

sequence of events was as follows:

Q: Okay. And at some point, you were stopped by Officer Jordan Zachary?

A: Negative. I was not.

Q: Okay. Tell me what happened.

A: I was going southbound and I was passing up Main Street in Brusly.

Q: Okay.

A: To the right occurred [sic] to be an incident of two people arguing. I was
in fear of the female. So, I was concerned about her well-being and maybe
the little argument that was going on. And when I proceeded to see Corporal
Zachary to the right of me after I passed the incident, I was like, in my mind,
you know, from my previous history of the things I've done in my job title in
my past, that, you know, I needed to let him know that there was an incident
going on. So, I turned – I – I pulled over to him.

---

[77] *Id.* (quoting *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674; *see also Winfrey*, 901 F.3d at 494 (same)).
[78] Rec. Doc. 28-3.

Q: Okay. And when you say you pulled over to him, where was Corporal Zachary?

A: Corporal Zachary was on the – I'm sorry.

Q: Oh, no. That's fine. Take your time.

A: On the service road next to the main highway.

Q: Okay. I'm trying to orient us.

A: Sure.

Q: Any landmarks that y'all were by?

A: The high school, the Brusly High School.

Q: Okay. And you said he was on the service road –

A: Correct.

Q: -- by the Brusly High School?

A: Correct.

Q: And you recalling pulling over to tell him about a disturbance; correct?

A: Correct. I can see him from my window from the passenger side to his driver's side. And I proceeded to explain to him that I seen something and needed to tell him. And he let me know that, actually, I'm pulling you over for speeding.[79]

Plaintiff argues that it is a disputed fact whether she initiated the contact with Zachary, or he pulled he over for speeding before her report.  And this dispute is material because it implicates her credibility in reporting the incident she witnessed to Zachary. Plaintiff argues her sworn testimony, which she claims the video confirms, "belies Officer Zachary's contention that Chelette only informed him of the argument in order to evade a

---

[79] Rec. Doc. 28-14, pp. 14-16.

speeding ticket where, again, Chelette was the one who initiated contact with law enforcement."[80]

Plaintiff also demonstrates a dispute with Zachary's attestation that she advised him of "a serious disturbance/motor vehicle accident at the redlight[.]"[81]   Plaintiff points out that she never told Zachary that there was a motor vehicle accident, and when he specifically asked, she explicitly said no.   Again, this statement goes to Plaintiff's credibility as to this charge: "While one might have expected Officer Zachary to find evidence that a motor vehicle accident occurred, there is not likely to be such evidence of a verbal altercation."[82]   Thus, Plaintiff maintains this "falsehood" regarding a motor vehicle accident is pertinent to the purported probable cause for the offense of false communication with intent to cause an emergency response.   On this point, the Court agrees that this is a material factual dispute.   The Court clearly heard Plaintiff reject the notion that she had witnessed a motor vehicle accident; she only ever stated that she saw people having an argument.

<u>Affidavit for Arrest/Search Warrant – False (Im)Personation of a Peace Officer</u>

Plaintiff claims Zachary continued these lies in this affidavit, referring again to Plaintiff's alleged report of a serious disturbance/motor vehicle accident "while stating she was a Work-Release deputy for WBRSO and an employee of the West Baton Rouge Parish Assessor's Office."[83] Plaintiff maintains the bodycam footage demonstrates that she never said either statement.   Rather, Plaintiff contends she stated she used to work

---

[80] Rec. Doc. 28, p. 11.
[81] Rec. Doc. 28-2.
[82] Rec. Doc. 28, p. 11.
[83] Rec. Doc. 28-5.

for West Baton Rouge but now works for the assessor.[84]  The undersigned struggled to hear the totality of this exchange both because Plaintiff's volume is lower than Zachary's and some of her comments were made facing away from the window and into the car.  The Court did affirmatively hear Plaintiff say the words "used to," but could not make out the full exchange on this topic.

Plaintiff also argues that, without the attestation that she was a Work-Release deputy for WBRSO, there is no probable cause for the offense of false personation of a peace officer.  As for the attestation that she held up a "badge," Plaintiff disputes this representation, arguing that she showed Zachary an ID card from her prior employment, which does not connote a commissioned officer like a badge does. Plaintiff urges the Court that these misrepresentations are not trivial as they are the only "facts" that could possibly establish probable cause for this offense. Additionally, the affidavit in support of the search warrant application also contains material falsehoods, according to Plaintiff. In this affidavit, Zachary seeks a warrant to search and "take into custody the WBR Sheriff's Deputy ID badge . . . and any other law enforcement paraphernalia that Chelette could potentially attempt to use in the future to falsely identify herself as a member of law enforcement."[85]  Plaintiff maintains her employee badge does not constitute "law enforcement paraphernalia" that would give rise to the need to search her home for same.

### Affidavit for Arrest – Public Intimidation and Retaliation

Plaintiff contends the affidavit Zachary submitted for this final arrest warrant is similarly untruthful.  Therein, Zachary attested that "he was aware" that Plaintiff claimed he "won't have a job for long after this"; Zachary also attested Plaintiff made similar threats

---

[84] Rec. Doc. 28-2.
[85] Rec. Doc. 28-7.

on the way to the jail.[86]    But Zachary's deposition testimony undermines these attestations. During his deposition, the entire video recording Zachary's transport to the jail was played.  Zachary was then asked and answered the following questions:

Q:    So you would agree during the time over, she never threatened you, right, in the unit, right? You didn't hear anything of a threat during that time?

A:    There was one side comment that I couldn't exactly make out what she said, but when I asked her to repeat herself, I don't think she did, so I'm not sure what she said.

Q:    So you don't know what it was?

A:    Right. Right.

Q:    So it could've been something but you don't know what it was?

A:     Right.

Q:    So you never heard a threat while you were in the car?

A:    Not here. Not here. Not up to this point.

Q:    Okay, when you say up to this point, from the time that you picked her up at her house to the time that you got her to the facility, no threats?

A:    I did not definitively hear any threats.

Q:    Okay. Thank you.

                                        ***

Q:    So at this point, I haven't heard anything that sounds like a threat from her either. Has she threatened you up until this point?

A:    No, I haven't heard any threats.

                                        ***

Q:    Okay. So the first time you heard of any threat comes from this officer, this West Baton Rouge Sheriff's sergeant, right?

---

[86] Rec. Doc. 28-9.

A:    Yes.

Q:    Okay. And you had not heard any threats up until this point, correct?

A:    That would be correct. Her telling me that was when I was informed of what she was saying.[87]

Plaintiff points to Zachary's above deposition testimony, highlighting that he never heard Plaintiff make any threat against him.  He was told by a West Baton Rouge Sheriff's Deputy that Plaintiff was heard making this statement, and he simply lied in the affidavit when he attested that he heard Plaintiff make similar threats while he transported her to the jail.  Because Zachary's credibility is critical to resolving the claims in this case, Plaintiff maintains the disputed facts must be resolved by the jury.

<u>Analysis</u>

First, the Court finds that there are numerous material facts in dispute such that Defendants are not entitled to summary judgment.  Plaintiff has carried her burden of pointing to summary judgment evidence that controverts many of Defendants' purported undisputed facts. Second, the Court has viewed all video footage submitted in this matter and finds that it does not unequivocally support either party's version of events.  Thus, a jury must determine what transpired during this traffic stop.

The Court also finds that Defendants are not entitled to protection by the independent intermediary doctrine.  As set forth above, under *Franks,* "an officer cannot avoid liability where a warrant affidavit (1) contains false statements or material omissions (2) made with at least 'reckless disregard for the truth' that (3) were 'necessary to the finding of probable cause.'"[88]  Plaintiff has satisfied her burden to demonstrate materially

---

[87] Rec. Doc. 28-15, pp. 64-67.
[88] *Hughes*, 100 F.4th at 619 (quoting *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674; *see also Winfrey*, 901 F.3d at 494 (same)).

disputed facts regarding these elements.

*Franks* also requires the Court to conduct a "corrected affidavit" analysis. This requires the Court to determine if probable cause would still support the arrest warrant for charged offense without the challenged statements. As to the charge of False Communication with Intent to Cause an Emergency Response, Zachary makes clear his belief that Plaintiff was falsely reporting a serious disturbance/incident or motor vehicle accident to distract Zachary from issuing a speeding citation. However, Plaintiff has submitted summary judgment evidence that contradicts Zachary's affidavit. First, Plaintiff testified that she initiated contact with Zachary to report an argument she observed at the intersection between a man and a woman. In the bodycam footage, Plaintiff is speaking first to Zachary, and then Zachary tells her to pull into the parking lot because he "got her" for speeding. While the Court could not clearly ascertain Plaintiff's initial words as soon as the recording begins, a jury may conclude that Plaintiff initiated the contact with Zachary, and thus, was not attempting to evade a speeding ticket.

Further, Plaintiff claims Zachary exaggerated her report by attesting she reported a "serious disturbance/motor vehicle accident" when she clearly only stated she saw an argument, and she explicitly rejected his suggestion that it was a car accident. Zachary attested that once he arrived to investigate this disturbance at the traffic light, he saw nothing out of the ordinary; however, if Plaintiff's version is believed, it follows that an argument between two people could have dissipated before Zachary got to the intersection. By elevating Plaintiff's report to a "serious disturbance/motor vehicle accident," the implication is that such a disturbance would have remained ongoing at the traffic light when Zachary arrived. Zachary thus reasoned that Plaintiff's report was a lie.

This distinction is relevant to Plaintiff's credibility. On the other hand, a jury may find Zachary's version of the exchange more credible and find that his attestations were either supported by the evidence or objectively reasonable mistakes. Either way, if you extract Zachary's characterization of events, there is no probable cause to support a warrant on this charge.

As to the charge of False Personation of a Peace Officer, if the court evaluates the affidavit for probable cause without Zachary's challenged characterizations, there is no probable cause. Zachary's version of this conversation — that Plaintiff represented herself to be a current employee of the parish assessor's office and presented a "badge" indicating she is law enforcement — is the crux of the false personation claim. Without these challenged statements, there is no probable cause for the offense charged.

Finally, as to the charge of Public Intimidation and Retaliation, the warrant is completely based on Zachary's statement that he was "aware" that Plaintiff made threats against his employment at the West Baton Rouge Parish jail, and he attested that he heard Plaintiff make similar threats during transport. However, as demonstrated by Plaintiff, Zachary's own deposition testimony undermines attestations in his affidavit. Extracting the challenged language from the affidavit demonstrates a lack of probable cause for the warrant.

Plaintiff also presented additional evidence placing Zachary's credibility at issue. Zachary testified that he reviewed all video footage before submitting the affidavits.[89] If this is true, Plaintiff contends Zachary either knowingly lied and manipulated the facts to support probable cause, or he was reckless and incompetent in making these mistakes.

---

[89] Rec. Doc. 38-15, pp. 37-39.

Either way, the jury must make this credibility call.  Plaintiff also points to the conflicting deposition testimony of Zachary and Southon, his superior officer.  Zachary testified that Southon "ordered" him to obtain the search and arrest warrants;[90] Southon testified that he did not order Zachary to do anything, he only advised Zachary to apply for the warrants if Zachary believed he had probable cause to do so.[91]  Zachary's testimony and Southon's testimony also conflicts regarding when Southon reviewed the traffic camera footage of the intersection where the purported disturbance took place.[92]

The Court also finds that Zachary is not entitled to summary judgment based on the qualified immunity defense.  As the Fifth Circuit said in *Hughes*, "an officer who recklessly or intentionally contributed misleading statements or omissions to a warrant affidavit violates the arrestee's constitutional rights. That violation has been clearly established since *Franks*."[93] Given that the jury could accept either party's version of events, resolution of these factual disputes is integral to determining whether Zachary's conduct was objectively reasonable. Accordingly, Defendants' motion for summary judgment on the Sec. 1983 *Franks* claim and on the state law malicious prosecution claim is denied.

### D.  STATE LAW DEFAMATION CLAIM

Plaintiff has asserted a claim of defamation under Louisiana law; she claims that "Officer Zachary lied not only to the judge to gain authority to arrest [her], but this lie was picked up by the news media, causing all the public to believe that [Chelette] was a

---

[90] *Id*. at p. 59
[91] Rec. Doc. 28-17, pp. 28-29.
[92] Rec. Doc. 38-15, pp. 87-106; Rec. Doc. 28-17, pp. 36-38.
[93] *Hughes*, 100 F.4th at 620.

criminal."[94]  Zachary moves for summary judgment on this claim, arguing that he is entitled to a conditional or qualified privilege.

Louisiana law provides that "defamation involves the invasion of a person's interest in his or her reputation and good name."[95]  To prevail on a defamation claim, a plaintiff "must prove: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury."[96] Words that accuse one of criminal conduct are considered defamatory *per se*.[97]  When a plaintiff proves publication of words that are defamatory *per se*, the elements of falsity and malice are presumed, but may be rebutted.[98] Injury may also be presumed.[99]  Based on the myriad of material factual disputes identified above, the Court finds that a jury could conclude from the evidence that Plaintiff has satisfied these elements.

But the inquiry does not end here. Louisiana law also provides that privilege is a defense to a claim of defamation.[100] This is because public policy requires, under certain circumstances, free communication of information to others without the fear of incurring liability if the good faith communication turns out to be inaccurate.[101] There are two types of privilege: (1) absolute, and (2) conditional or qualified.[102] Only conditional or qualified privilege is relevant in this matter, which requires a two-step inquiry: (1) whether the circumstances of the communication give rise to a qualified privilege, and (2) whether the

---

[94] Rec. Doc. 1, ¶ 10.
[95] *Hoffman v. Bailey*, 257 F.Supp.3d 801, 819 (E.D. La. June 20, 2017); *Costello v. Hardy*, 2003-1146 (La. 1/21/04), 864 So.2d 129, 139.
[96] *Starr v. Boudreaux*, 2007-0652 (La. App. 1 Cir. 12/21/07), 978 So.2d 384, 389.
[97] *Id.* (citing *Kennedy v. Sheriff of East Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So.2d 669, 674-75)).
[98] *Costello*, 864 So.2d at 140.
[99] *Id.*
[100] *Id.* at 141.
[101] *Kennedy*, 935 So.2d at 681-82.
[102] *Id.* at 681.

privilege was abused.[103] Determining whether the privilege was abused requires that the

grounds for abuse – malice or lack of good faith – be examined.[104]  As this Court recently

stated:

> "While the first step is generally determined by the court as a matter of law,
> the second step of determining abuse of conditional privilege or malice is
> generally a fact question for the jury 'unless only one conclusion can be
> drawn from the evidence.'"[105] When "there is probable cause for [an] arrest,
> Louisiana law affords police officers a qualified privilege against defamation
> actions related to reports of the arrest and the charges on which the arrest
> was based."[106]

This Court has already held that a jury could conclude that either side's version of events

is supported by the evidence.  Plaintiff has squarely placed Zachary's credibility in

question by submitting evidence that could support malice and lack of good faith.

Whether Zachary's privilege was abused is a question for the jury.  Accordingly, summary

judgment is not appropriate on Plaintiff's state law defamation claim.

### E.    Vicarious Liability

The only claim asserted against the Town of Brusly is state law vicarious liability.

Under La. Civ. Code art. 2320, "an employer is subject to vicarious liability for the tortious

conduct of his employee, irrespective of his title, while acting within the course and scope

of employment."[107] Governmental entities "do not enjoy special protection from vicarious

liability under Louisiana law and are subject to *respondeat superior* like every other

employer."[108] The Louisiana Supreme Court has "stated that an employee's conduct is

---

[103] *Id.* at 682 (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730, 745)).
[104] *Wooten v. Harrell*, No. 23-368-SDD-SDJ, 2024 WL 1815349, at *8 (M.D. La. Apr 25, 2024).
[105] *Id.*
[106] *Id.* (quoting *Robertson v. City of Shreveport*, 2018 WL 1769373, at *3 (W.D. La. Apr. 12, 2018) (citing *Thorn v. McGar*y, 684 Fed. Appx. 430, 435 (5th Cir. 2017))).
[107] *Id.* (quoting *Brasseaux v. Town of Mamou*, 752 So. 2d 815, 821 (La. 2000)).
[108] *Deville v. Marcantel*, 567 F.3d 156, 174 (5th Cir. 2009) (citing *Brasseaux*, 752 So. 2d at 815); *see also Bussey v. Dillard Dep't. Stores, Inc.*, 984 So. 2d 781, 784 (La. App. 1 Cir. 2008) ("[V]icarious liability [under art. 2320] applies to law enforcement employers as well." (citations omitted)).

generally within the course and scope of his employment if the conduct is of the character and nature that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer."[109]

There is no dispute that Zachary was in the course and scope of his employment at all relevant times. Because the Court has found that Zachary is not entitled to summary judgment on the state law claims, there is a potentially culpable employee for which the Town could be held vicariously liable.   Accordingly, Defendants' motion for summary judgment on Plaintniff's vicarious liability claim is denied.

## III.    CONCLUSION

Accordingly, for the foregoing reasons, Defendants' Motion for Summary Judgment[110] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on this 25th day of September, 2025.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[109] *Brasseaux*, 752 So. 2d at 820 (internal citations omitted).
[110] Rec. Doc. 22.